# In the United States Court of Federal Claims

No. 11-538C
(Filed under seal: January 13, 2012)
(Reissued:  January 30, 2012)[1]
(Bid Protest)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                    *      28 U.S.C. § 1491(b);
MG ALTUS APACHE COMPANY,            *      Bid Protest; Supplementation
                                    *      of the Administrative Record;
             Plaintiff,             *      Incomplete Record.
        v.                          *
                                    *
                                    *
THE UNITED STATES,                  *
                                    *
             Defendant.             *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Jonathan D. Shaffer, Smith Pachter McWhorter PLC, 8000 Towers Crescent Drive, Vienna, VA 22182-2700 for Plaintiff.  John S. Pachter, Mark E. Hanson, and Mary Pat Buckenmeyer, of Counsel.

William P. Rayel, Tony West, Jeanne Davidson, and Kirk Manhardt, Commercial Litigation Branch, Civil Division, United States Department of Justice.  Elizabeth Witwer, Commercial Litigation Branch, United States Department of Justice, and Scott N. Flesch, United States Army Contract and Fiscal Law Division, of Counsel.

---

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

---

**WILLIAMS,** Judge.

In this post-award bid protest, MG Altus Apache Company ("MG AA") challenges the awards of multiple contracts by the Department of the Army ("Army") for trucking services in the Afghanistan Theater of Operations.  MG AA alleges that the Army improperly determined MG AA to be nonresponsible.

---

[1] This opinion was issued under seal on January 13, 2012.  The Court invited the parties to submit proposed redactions by January 23, 2012.  The opinion issued today incorporates the parties' redactions, errata corrected. Redacted material is represented by brackets [].

The matter comes before the Court on MG AA's Motion to Supplement the Administrative Record ("AR").  MG AA seeks to supplement the AR with correspondence relating to letters of concern and cure notices issued to its joint venture under the prior Afghan trucking contract.[2]

The Court grants the requested supplementation finding that MG AA listed the prior Afghan trucking contract as a reference to be evaluated in the responsibility determination, and the solicitation expressly provided that corrective action taken to remedy past performance problems would be considered in the responsibility assessment.  As such, correspondence describing performance issues and MG AA's corrective action are central to the Army's responsibility determination and necessary for the Court's review of this decision.

## Background[3]

### The Solicitation

On February 22, 2011, the Army issued the solicitation for National Afghan Trucking ("NAT") services in Afghanistan.  AR 141.  The purpose of the NAT Contract was to provide a secure and reliable means of distributing reconstruction material, security equipment, fuel, miscellaneous dry cargo, and life support assets to and from forward operating bases and distribution sites throughout the combined joint operations area in Afghanistan.  The Army anticipated the award of indefinite delivery/indefinite quantity contracts for trucking services in three suites: Suite 1, for bulk fuel, Suite 2, for dry cargo, and Suite 3, for heavy cargo.  AR 390.  The NAT procurement was essentially a follow-on procurement to the prior Host Nation Trucking ("HNT") contract which had covered substantially the same mission requirements.  AR 21220–43.

The solicitation stated the Army would make awards based on Federal Acquisition Regulation ("FAR") 15.101-2, Lowest Price Technically Acceptable ("LPTA").  Proposals were to be evaluated under two factors, technical capability and price.  AR 391.  Only technically acceptable proposals would be evaluated for price.  Under price, each suite was to be evaluated to determine whether an offeror's unit prices were fair, reasonable, and balanced. AR 393.  The solicitation did not list past performance as a separate evaluation factor but included past performance as an element of the responsibility determination.  AR 390-93.

The solicitation stated that the responsibility determination was to be based on the following general standards set forth in FAR 9.104-1:

---

[2] MG, Mesopotamia Group, was a member of a different joint venture for purposes of the prior contract, a joint venture with Etifaq-Millietai-Afghan ("EMA").  In bidding on the solicitation at issue, Plaintiff MG AA was part of a joint venture comprised of three entities -- MG, Altus Supply Services and Logistics, and Apache Defense, LLC.

[3] This background is derived from the Administrative Record ("AR").  The AR contains classified material, and the portion of this decision referring to classified material is redacted in toto and contained in a classified addendum.

- Offerors must be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments.

- Offerors must have a satisfactory performance record (see FAR 9.104-3(b) and FAR subpart 42.15).

- Offerors must have a satisfactory record of integrity and business ethics.

- Offerors must have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, quality assurance measures, and safety programs applicable to materials to be produced or services to be performed by the prospective contractor and subcontractors).

- Offerors must be otherwise qualified and eligible to receive an award under applicable laws and regulations.

AR 393-94.  See FAR 9.104-1.  The solicitation provided that past performance would be considered as a part of the responsibility determination stating:

> **A prospective contractor that is or recently has been seriously deficient in contract performance shall be presumed to be nonresponsible, unless the contracting officer determines that the circumstances were properly beyond the contractor's control, or that the contractor has taken appropriate corrective action.  Past failure to apply sufficient tenacity and perseverance to perform acceptably is strong evidence of nonresponsibility.  Failure to meet the quality requirements of the contract is a significant factor to consider in determining satisfactory performance.**

AR 394 (quoting FAR 9.104-3(b)).

In addition, the solicitation provided that the government would evaluate the responsibility of all subcontractors, as follows:

> **Generally, prospective prime contractors are responsible for determining the responsibility of their prospective subcontractors; however, it has been determined to be in the Government's best interest to evaluate the responsibility of all subcontractors, including Private Security Companies (PSCs).  Determinations of prospective subcontractor responsibility shall affect the Government's determination of the prospective prime contractor's responsibility.  A prospective contractor may be required to provide written evidence of a proposed subcontractor's responsibility.  The same standards used to determine a prime contractor's responsibility shall be used by the Government to determine subcontractor responsibility.**

3

AR 394 (quoting FAR 9.104-3(b)).

As part of their proposals, offerors were required to submit at least three contract references for the prime and for each proposed subcontractor. AR 383. The solicitation stated that "[c]ontract references should be recent (within the last three years) and relevant (for trucking services in Afghanistan) . . . ." AR 383. The solicitation provided that the Army would use this information "when evaluating contractor and subcontractor responsibility." AR 383. Further, the solicitation provided that if the responsibility determination uncovered prior contract performance issues, the contracting officer would consider whether the contractor had taken appropriate corrective action. AR 394.

**MG AA's Offer**

MG AA timely submitted its proposal for all three suites on April 5, 2011. AR 4049-332. As part of its proposal, MG AA described MG's performance under the HNT contract. The proposal stated that MG was the member of the MG AA joint venture with experience operating in the Afghan environment. AR 4092. In response to the solicitation requirement that offerors submit relevant contact references to be used in the responsibility determination, MG AA listed the HNT contract as a reference for itself and three of its proposed subcontractors. AR 4128. Under its technical capabilities for all three suites, MG AA listed its missions under the HNT contract as evidence of its past performance as a prime contractor for the United States Government in Afghanistan. AR 4136, 4199, 4273.

**The Nonresponsibility Determination**

By letter dated July 31, 2011, the contracting officer informed MG AA that it was being evaluated for responsibility and listed seven areas of concern, requesting that MG AA provide responses to each. AR 16244-45. The letter stated "any response should explain the circumstances giving rise to the area of concern, identify any mitigating circumstances, and outline the corrective action taken to prevent reoccurrence." AR 16244. These areas of concern -- all relating to MG AA's performance of the HNT contract -- were:

1. A Letter of Concern was issued [for] [                                    ], and non-compliance with In-transit Visibility contract requirements, dated 22 Dec 2009.

2. A Cure Notice was issued regarding failure to provide deliverables (including arming requirements), dated 1 Jan 2010.

3. A Letter of Concern was issued for failure to meet Private Security Contractor Arming Requirements, dated 1 Feb 2010.

4. A Letter of Concern was issued for submission of [                ], dated 31 Aug 10.

5. A Cure Notice was issued for non-compliance with In-Transit Visibility contract requirements and Defense Base Act insurance compliance, dated 5 Jul 2011.

6.  To date, [                    ] has been withheld for a combination of [
                                                                            ].

7.  Reoccurring instances of submission of [
        ] have been reported through the life of the contract.

AR 16244-45.  On August 2, 2011, MG AA responded in a 10-page letter citing each area of concern and listing the circumstances surrounding the events, mitigating factors, and corrective action taken.  AR 16250-59.

The contracting officer made her nonresponsibility determination on August 10, 2011. With respect to MG AA's ability to comply with contract requirements as specified in FAR 9.104-1(b), the contracting officer determined:

There is evidence that [MG AA's] repeated failure to comply with the terms and conditions of [the HNT contract] inhibited compliance with the required delivery and performance requirements when performing HNT in Afghanistan. Specifically, a Cure Notice issued regarding failure to provide deliverables (including arming requirements), dated 1 Jan 2010 and the Letter of Concern issued for failure to meet Private Security Arming Requirements, dated 1 Feb 2010.  These events demonstrate a systemic trend in failing to comply with significant contract requirements which include critical areas of security and safety which directly impact compliance with required schedule and performance requirements.  Contractors under the HNT contract cannot perform individual transportation missions unless compliance with arming and associated training requirements and utilization of authorized PSC firms are demonstrated.  [MG AA's] history of non-compliance with submission of deliverables, inability to properly manage its employees and subcontractors, including the Private Security Contractor, and its failure to implement effective corrective action which prevented reoccurrence do not support a determination that [MG AA] will be able to comply with the required delivery and performance requirements under the NAT requirement.

MGA 4.

With respect to the adequacy of MG AA's past performance record as required in FAR 9.104-1(c), the contracting officer determined:

Review of the [areas of concern] indicates a systemic problem with MG AA adhering to the material provisions of the contract, thus resulting in significant doubt that they can perform the services required without a high degree of risk passed to the US Government.  [MG AA] failed to comply with the requirements of the Statement of Work of the contract on several occasions.  At minimum, and after being notified on at least two (2) occasions, [MG AA] failed to comply with the Private Security Contractor Arming requirements, particularly, non-compliance with providing correct and complete armed employee authorization

packages and registration in the Synchronized Predeployment Operational (SPOT) database.

Multiple failures to comply with the HNT SOW requirements led to [
            ] being withheld for a combination of [
                                          ] throughout the period of performance of its current trucking contract.  The cancelled missions due to failure to comply with the SOW requirements exposed Afghan and American Service members to unnecessary risk.   [MG AA] has demonstrated current ongoing systemic failures in meeting the terms and conditions of the HNT contract.

MGA 4.

With respect to MG AA's record of business ethics and integrity as specified under FAR 9.104-1(d), the contracting officer found that MG AA lacked integrity and business ethics and cited four events which she found showed [
        ]

(1) Noncompliance with In-transit Visibility contract requirements under the HNT contract as evidenced by a letter of concern dated December 22, 2009, and a cure notice dated July 5, 2011;

(2) The withholding of [                            ] from MG AA for a combination of [
                                                ] under the HNT contract, [                    ] of which was attributed to MG AA's performance failures;

(3) The submission of [                                                    ] as evidenced in a letter of concern dated August 31, 2010;

(4) MG AA's [
                                                      ] during performance of the HNT contract.

MGA 5-6.  The contracting officer noted that MG AA had implemented corrective plans, but that these plans did not prevent repeated offenses and referenced MG AA's "inability to successfully manage its employees and subcontractors."  MGA 5.

The contracting officer also determined that MG AA failed to meet the requirements of FAR 9.104-1(e), that offerors "have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them."  MGA 7; FAR 9.104-1(e).  MG AA received Cure Notices in January 2010, and July 2011, for failure to improve Global Distribution Management System ("GDMS") utilization rates, failure to comply with Defense Base Act insurance coverage, and refusing missions.  MGA 7.  In making her final

determination, the contracting officer found that MG AA had been "seriously deficient in contract performance while performing the HNT contract," stating:

> A review of the supporting documentation and [MG AA's] responses substantiate the circumstances were not beyond the contractor's control and the record demonstrates that appropriate corrective action was not taken to prevent reoccurrence of the deficient performance.  This past failure to apply sufficient tenacity and perseverance to perform acceptably is deemed sufficient evidence of [MG AA's] non-responsibility under the NAT solicitation.

MGA 13-14.

By letter dated August 10, 2011, the contracting officer informed MG AA that it had been eliminated from the competition because it had been determined nonresponsible.  AR 16326-27.  By a separate letter also dated August 10, 2011, the Army provided MG AA with a debriefing, indicating that MG AA's proposals for all suites were technically acceptable, and that MG AA's prices were fair, reasonable, and balanced, but that MG AA was determined nonresponsible under FAR 9.104(b)-(e) and (g).  AR 16338-39.

MG AA initially filed a bid protest on August 18, 2011, at the Government Accountability Office ("GAO") challenging the Army's nonresponsibility determination.  The GAO dismissed MG AA's protest on the ground that protests by other NAT disappointed offerors were pending before this Court.  MG AA filed its protest with this Court on August 26, 2011.  At the request of the parties, the briefing schedule was extended due to delays in receiving and briefing classified material.

## Discussion

In this protest MG AA claims that its nonresponsibility determination was arbitrary and capricious because the contracting officer ignored available and relevant information showing that MG AA took appropriate corrective action with respect to performance problems under the HNT contract.

"As a general rule, in determining whether an agency's actions are arbitrary or irrational, the 'focal point for judicial review . . . should be the administrative record already in existence, not some new record made initially in the reviewing court.'"  Knowledge Connections, Inc. v. United States, 79 Fed. Cl. 750, 759 (2007) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985)).  However, as the court in Vanguard Recovery Assistance v. United States recognized,

> the administrative record of a protested procurement submitted by the agency involved is not always a complete record of documentary materials generated during the procurement and maintained contemporaneously with the occurrence of the salient events or actions associated with the procurement.  When the record submitted by the agency is not complete, a motion to correct or supplement the record is appropriate.

99 Fed. Cl. 81, 92 (2011).

It is fundamental that to perform an effective review pursuant to the Administrative Procedure Act, the governing statutory standard here, the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process. <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 420 (1971). Where the "omission of extra-record evidence precludes effective judicial review," a court may permit supplementation of the administrative record. <u>Axiom Res. Mgmt. v. United States</u>, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (internal quotation omitted). "Faced with a request to supplement the administrative record, the Court must 'make the required threshold determination of whether additional evidence [is] necessary.'" <u>L-3 Commc'ns Integrated Sys., L.P., v. United States</u>, 91 Fed. Cl. 347, 354 (2010) (quoting <u>Axiom</u>, 564 F.3d at 1380).

MG AA seeks supplementation of the AR on the ground that the Administrative Record as currently compiled is incomplete. MG AA claims that although the contracting officer relied on correspondence between the Army and MG AA regarding its performance under the HNT contract, the record does not contain all relevant communications on such performance issues.

Specifically, MG AA seeks to supplement the record with four categories of documents contained in proposed AR Tabs 126 through 133:

1) MG AA's response dated January 6, 2010, to the letter of concern dated December 22, 2009, regarding [                    ], and non-compliance with In-transit Visibility contract requirements. Tab 126 at 21255-63.

2) MG AA's response dated September 1, 2010, to the letter of concern dated August 31, 2010, for submission of [                              ]. Tab 127 at 21264-65.

3) MG AA's response dated July 19, 2010, to the Army's Rejection of Cure Notice Response dated July 10, 2010. Tab 128 at 21266-69.[4]

4) Correspondence regarding an allegation that on or around August 5, 2011, a representative of MG AA attempted to access a military installation using an identification badge that was not his own. Tabs 129-33 at 21270-76. The HNT contracting officer issued a letter of concern on August 9, 2011, one day before the NAT contracting officer made her determination of nonresponsibility, and MG AA was informed it could respond to the August 9 letter by August 15, 2011. Tab 129 at 21270. Tabs 130-32 constitute MG AA's response and related correspondence with the Army regarding this matter. Tab 133 is a letter dated August 16, 2011, from the HNT contracting officer, stating that MG AA's responses were satisfactory, that MG

---

[4] The Army does not object to supplementing the AR with Tabs 126 and 128, MG AA's response regarding [                    ], and noncompliance with In-transit Visibility contract requirements (Tab 126), and its response to the Army's Rejection of Cure Notice Response (Tab 128), because these responses are directly referenced in a letter from MG AA addressing the responsibility issues.

AA could resume missions, and that the Army would closely monitor MG AA to ensure compliance with the contract and other security requirements.  Tab 133 at 21276.

## MG AA's September 1, 2010 Response to the HNT Contracting Officer Regarding the [                                              ],Tab 127

MG AA listed the HNT contract as a reference for itself and three subcontractors.  AR 4128-29.  The contracting officer issued a letter of concern on August 31, 2010, regarding [                                              ] in connection with MG AA's performance of the HNT contract.  Although the contracting officer referenced this August 31, 2010 letter of concern in her official Determination and Findings of Nonresponsibility, she did not mention MG AA's September 1, 2010 response to this letter of concern.  In its September 1 letter, MG AA explained the circumstances surrounding the [                                              ] and described the corrective actions it implemented to prevent recurrence.

Because the Army announced in the solicitation that it would consider both contract references and corrective action in making the responsibility determination, MG AA's submission explaining its corrective action is properly included in the record.  AR 383, 393.  The determination of whether to supplement the Administrative Record must be made in the context of the solicitation requirements.  Northeast Military Sales, Inc. v. United States, 100 Fed. Cl. 96, 97 (2011).  In Northeast Military Sales, the Court of Federal Claims granted supplementation of the AR with past performance information about the awardee contained in pricing surveys, an internal agency quality control checklist, and an internal Inspector General's report, finding that the solicitation stated that in evaluating past performance, the agency would consider "all in-house information" and that past performance would be assessed based on "consideration of all relevant facts and circumstances."  Id.  As the court in Northeast Military Sales explained, where "the Solicitation indicates that the agency will consider all materials of a particular type in its evaluation of offers, the Administrative Record is not complete if it omitted any such materials." Id.; accord Diversified Maint. Sys., Inc. v. United States, 93 Fed. Cl. 794, 801 (2010) ("[T]he administrative record may be supplemented when the agency allegedly failed to consider information relevant to its final decision.").

Here, the September 1 letter that MG AA wrote to the HNT contracting officer in the course of performing the HNT contract constituted corrective action that the solicitation expressly stated would be considered in the responsibility determination.  MG AA's September 1, 2010 response was in the possession of the agency, and MG AA's performance on that predecessor contract was pivotal in its nonresponsibility determination.  As such, this document is necessary for this Court's ultimate assessment of whether the contracting officer's decision to ignore this information was, as Plaintiff claims, arbitrary and capricious and was "too close at hand" to be omitted from the AR.  See Vanguard Recovery Assistance, 99 Fed. Cl. at 100 n.19 (recognizing that an agency record of a procurement action may be incomplete and require further development "where a court may well have to look outside the agency record to determine tentatively what, if anything, the agency had in hand but did not consider . . . .").

The Army argues that the Court should not supplement the AR with the September 1, 2010 letter because, although the NAT contracting officer specifically mentioned the letter of

concern regarding [                                                    ] in a July 31, 2011 letter to MG AA, when MG AA responded it did not attach the September 2010 letter it now seeks to include in the record.  The Army contends that MG AA cannot now complain that the contracting officer should have considered its response when MG AA itself failed to bring the document to the contracting officer's attention earlier.  However, MG AA's earlier treatment of its documents does not dictate whether such documents are necessary for effective judicial review now.  MG AA did not waive its right to seek supplementation of the AR by failing to provide a document to the NAT contracting officer in an earlier exchange.

The Army further claims that this September 1, 2010 letter should not be added to the AR because another document, MG AA's response to the NAT contracting officer's July 31, 2011 letter essentially summarizes the contents of its original September 1, 2010.  As the court in Northeast Military Sales recognized, "the AR is not limited to information that is not 'duplicative,' as defendant suggests."  100 Fed. Cl. at 99.  It is not appropriate for the Government to selectively include some documents in the AR and omit others on the ground that essentially the same information is summarized elsewhere in the record.  The AR should contain all relevant information on which the agency relied or allegedly should have relied in making the challenged decision.

Finally, Defendant argues that the Court cannot question a contracting officer's "reasonable" determination that she had enough information to make a nonresponsibility determination, citing John C. Grimberg Co., Inc. v. United States, 185 F.3d 1297 (Fed. Cir. 1999).  Def.'s Response to Pl.'s Mot. to Supplement 6, 8.  This argument begs the question.  Of course, courts may review a contracting officer's decision on what information is properly considered in assessing a contractor's responsibility.  As the Grimberg court recognized, the contracting officer may "properly make a nonresponsibility determination based on the existing record, without giving the contractor an opportunity to explain or defend against adverse evidence.  Of course, courts may review such decisions by the contracting officer for an abuse of discretion. . . ."  Grimberg, 185 F.3d at 1303 (internal citation omitted) (emphasis added).  See also Acrow Corp. of Am. v. United States, 96 Fed. Cl. 270, 277 (2010).  In this case, MG AA claims that the responsibility determination was unreasonable because the contracting officer did not consider all relevant information available to her.  It is well established that "the administrative record may be supplemented when the agency allegedly failed to consider information relevant to its final decision."  Diversified Maint. Sys., Inc., 93 Fed. Cl. at 801; see Mori Assoc., Inc. v. United States, 98 Fed. Cl. 572, 575 (2011); Allied Tech. Group, Inc. v. United States, 92 Fed. Cl. 226, 231 (2010) (citing Savantage Fin. Servs., Inc. v. United States, 81 Fed. Cl. 300, 311 (2008)); Totolo/King v. United States, 87 Fed. Cl. 680, 692 (2009); Global Computer Enters. v. United States, 88 Fed. Cl. 52, 62 n.14 (2009).

In sum, because MG AA's September 2010 letter reflects MG AA's corrective action taken in response to the [                                              ] and because the solicitation stated the Army would consider "whether the contractor [took] appropriate corrective action," this letter is properly included in the AR.  See AR 393.

**Misuse of the Identification Card, Tabs 129-133**

The entire discussion of this requested supplementation is contained in the Classified Addendum, filed this date.

**Conclusion**

Plaintiff's Motion to Supplement the Administrative Record is **GRANTED**.  The documents in Tabs 126-33 are accepted as a supplement to the AR this date.

The parties shall propose redactions to this opinion by **January 23, 2012.**

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**